R & D Olson Limited Partnership v. Village of Glendale Heights Mr. Andrew Acker. On behalf of the FAA, Mr. Andrew Acker. On behalf of the FAA, Mr. William Belmonti and Paul Cunningham. Good morning, Mr. Acker. Good morning, Your Honors. My name is Andrew Acker. I'm a law firm, Strano, Romello, and Durkin. I am appearing this morning on behalf of the Village of Glendale Heights. This appeal presents an issue of first impression. It involves the ascertainment of the legislative intent of the 2009 amendment to the involuntary annexation section contained in section 7-1-13 of the Illinois Municipal Code. Are you saying there's some ambiguity in that statutory section? I am not, Your Honor. Well, then why is there an issue here? The issue, Your Honor, is that this section has never been interpreted in a reported decision. There is a common law procedure that appears to have been relied upon by the trial court in this case that we believe is at odds with the express lane which contained in the 2009 amendment of subsection C. Counsel, how is priority legally relevant where only one municipality has completed the annexation process? That's an excellent question, Your Honor. The issue of priority arises in a number of different settings. In this particular setting, Your Honor, we believe that the priority is really a red herring argument. Having said that, that was what got the standing of the plaintiff in this case to proceed with a quorum to a complaint against the Village of Glendale Heights. It is our position, Your Honor, that there is no priority issue actually involved. To the extent that there has been voluntary petitions submitted to the Village of Bloomingdale pursuant to section 7-1-8 of the Municipal Code, those petitions arguably are still pending. However, it is our understanding the Village of Bloomingdale has not taken any action towards them. As such, Your Honor, we believe that under the 2009 amendment that the Village of Glendale Heights has effectuated the annexation pursuant to the adoption of the ordinance on September 6, 2012. At that time, Your Honor, they were in complete satisfaction of all the statutory terms of the annexation statute, and we believe that they effectuated an annexation of the territory at issue. And the plaintiffs have not attacked any other aspect of the annexation process? That is correct, Your Honor, they have not. Continuing on, as Your Honors are aware, annexation was unknown at common law. As such, the alteration of municipal boundaries are wholly matters for the legislature's authority. When an annexation issue is presented, the courts are bound to effectuate the legislative intent of the statute based upon the plain and ordinary meaning of the language used in the statute. In effect, at the time, the municipal boundaries are altered. In this case, Your Honors, the annexation occurred in September of 2012. The annexation statute, in effect at that time, had been amended as of 2009. It provided for the first time a procedure that we believe was intended to deal with overlapping annexation proceedings. In this case, the operative section, we believe, is found in subsection C of section 13. We term this as being a conditional type of statutory term that arises based upon the timing event of when notices effectuated pursuant to subsection B of section 13. In this instance, there is no dispute that the village of Glendale Heights did, in fact, effectuate its subsection B notice in a timely fashion 14 days and 10 days prior to the adoption of the ordinance as required. In that instance, then by operation of subsection C of section 13, then unless an annexation proceeding has been initiated or a valid petition for annexation under section 7-1-2, 7-1-8, 7-1-11, or 7-1-12 has been received by a municipality prior to the publication and mailing of notices required in subsection B, then no other municipality may annex the proposed territory for a period of 60 days from the date of such subsection B publications and notices. And so if, excuse me, if the legislature intended to create a new method of determining priority in these involuntary annexations, the 7-1-13 situations, of what effect was this 15-day notice to taxpayer requirement? Well, Your Honor, the... Why was the legislature simultaneously requiring giving taxpayers notice and yet supposedly eliminating their option of filing a preemptive section 7-1-8 petition? I think the operative word of your question, Your Honor, is the preemptive. The two techniques of giving objection... To answer your question, the 15-day notice affords the affected property owners, territory owners, and residents of that territory the ability, one, to object, to show up at the municipal hearing and voice their objection to that. In this case, they were certainly afforded that opportunity. In this case, they did not avail themselves of that opportunity. Well, would their petition to Bloomingdale constitute an objection? On a certain level, Your Honor, I suppose, except that it was never... The village of Glendale Heights was never informed of the fact that those petitions had been filed. They were completely ignorant of them. Had they known, there may have been a different outcome. I don't know. Those are certainly facts that could have arisen but did not arise in this case. But getting back to your question, Your Honor, as far as the preemptive ability to file a voluntary annexation petition, a la Leland Grove style of type of proceeding. They can still do that, Your Honor, but we believe that the legal effect of that does not have the same legal effect as occurred in Leland Grove. Because in Leland Grove, at the time, that statute did not provide for this mechanism of trying to sort out who has priority. Certainly, they could go ahead and do that and they did, in fact, do that. Having said that, there's nothing that prevents any of these folks from filing a Quo Veronto in the event that the village of Glendale Heights did not effectuate the annexation properly. They can still bring it. And in the event that their challenge is successful and the Quo Veronto's ordinance is found to be invalid because they didn't follow the procedures. At that point in time, then, Bloomingdale, their petitions would then come to have significance and could then be acted upon. Certainly, after the time period of 60 days having expired. Again, Your Honor, we don't believe that the underlying policies identified in Leland Grove have been eliminated at all. They still have, the property owners still have the ability to show up and object and they still have the ability to file. The difference, however, we believe after the 2009 amendment is that the effect of filing doesn't give them a priority unless it occurred before the notice is given. As such, Your Honor, we submit that there is no language in Section 13 or Section 8 of the Municipal Code that provides for avoiding of an annexation ordinance adopted under Section 13. And in full compliance of this section, merely because a Section 8 annexation petition has been filed for the same territory with another municipality after notice has been given. That language does not exist. As such, we submit that this Court should effectuate the plain and ordinary meaning found in Section 13. Again, it turns to Section A, which is found in Appendix 11 of Appellant's brief. And it begins, whenever any unincorporated territory containing 60 acres or less is wholly bound by, and then there's a series of subparagraphs. We believe that subparagraph A is the only relevant subparagraph to be looking at. And that is of one or more municipalities. Proceeding to the next after subparagraph I, that territory may be annexed by any municipality by which it is bounded in whole or in part by the passage of an ordinance to that effect after notice is given as provided in subsection B of this section. That is exactly what we follow, the Village of Glendale Heights followed in this case. They provided subsection B notice 15 days and 10 days prior to the adoption. And they are, this territory is approximately 20 acres, which is 60 acres or less. It is bounded by one or more municipalities, which is Village of Glendale Heights as well as Village of Bloomingdale. And they, in fact, had a public meeting pursuant to notice, at which time they had a unanimous vote and adopted ordinance number 2012-56, which annexed this particular territory as described. So at that public meeting in September, was it September 8th and then the actual ordinance was recorded on September 12th, that first date, could they have stepped up and say we have an objection or would that objection have had to be in writing or is there a procedure under any sort of circumstance that you're aware of within your ordinances? Your Honor, excellent question. There is no procedure. All you need to do, any member of the public is allowed at that point, at the beginning of the proceeding, if they're invited for public comments. Certainly any member of the public could have stepped up, addressed the council at that time, and raised their objection, such as we filed another petition with the Village of Bloomingdale. We have preference in going over to the Village of Bloomingdale. And that would have been part of the legislative determination that the Village of Glendale engaged in at that time, since those facts were not known and were not expressed. The Village of Glendale Heights had all, the only thing they had in front of them was the intent of going forward as proposed. They had no objection and they acted accordingly. Okay. Now, before I ask that question, I had intended to ask another one. Sure. And that was during your presentation upon how this statutory authority works in your opinion. You used the word priority. Yes. Did you mean that to be that, because I think Justice Inhofe said priority seems to be between two municipalities. This voluntary petition filed, does it give them, does it give the plaintiffs priority or something else? I think, Your Honor, that the question that you're asking is a good one, because there is a little bit of confusion. It's not the Village of Glendale Heights versus the Village of Bloomingdale. It's not, the caption is not something else. Priority came from because it was the timing of the notice of the ordinances, et cetera. Having said that, Your Honor, because the plaintiffs are championing their voluntary petition for annexation under Section 8 to Bloomingdale, they have the same burden as the Village would in showing that their petitions have been completed according to law. And as such, when the Village of Glendale Heights raised their affirmative defense of one, justification, and two, that there had not been a complete compliance of the statute under Section 8, because there had not been any action taken by Bloomingdale to accept or do anything towards the voluntary petitions filed by petitions. In that instance, there is, I appreciate what you're saying, Your Honor. The priority may not be the correct term, but it's the closest term I have under the law that I can put my hands on that explains these concepts. Certainly, they have the same burden. Once the Village of Glendale Heights satisfied the justification, they show that we did all the statutory steps. At that point, it's our position that the burden then shifted to plaintiffs to prove that they had done all of their steps to finality, such as completion of the process under Section 8. Again, this notion of priority and yes, ma'am. Well, excuse me. What steps are we talking about? I mean, Bloomingdale could have decided not to annex them, correct? That's correct. Right. Yes. So, I mean, of what significance is the fact that they did this step, that step, when we don't have a completed annexation on the part of Bloomingdale? Yes. And Bloomingdale is not a party. Well, I think that you'll find, Your Honor, that the significance is that they have, you just can't stop and say we have priority because we filed. Again, I'm using this terminology, priority. The plaintiffs cannot simply say we win because we filed our voluntary petitions. Because we raised these other issues, and specifically, you hit the issue right on the head, there was never any action taken by Bloomingdale to complete the annexation process. In the case of, that I cite to this court, Village of Kildare versus Village of Lake Zurich, 167-IL-AP-3783. In that case, this is exactly the same issue. And the village, at that point, they had not taken any action towards effectuating it on the other, of completing the annexation process. In that case, the court said that the trial court erred in ending its inquiry and finding that the municipality had priority and not getting to the other issues raised in the quo morato. Go ahead. Finish your thought. Yes. We would suggest that this is a matter of law, the issue presented is a matter of law. We would request that this court find that the village's ordinance number 2012-56 adopted on September 6, 2012 is a valid annexation of territory pursuant to section 13 of the municipal code. We would request that this court reverse the trial court's April 19, 2013 final order and enter judgment in favor of the village and against plaintiffs as a matter of law. Thank you very much. Mr. Belmonte and Mr. Connerty, are you both going to present? Yes. Okay, so you've discussed that with Clerk Mangan. I guess we're good. Thank you. May it please the court, my name is Paul Connerty, C-O-N-A-R-T-Y. I represent all of the plaintiffs except Graber Concrete, which is Mr. Belmonte's client, although he and I are obviously working in lockstep on this whole situation. I want to take you back to 1988, to the Leland Grove case, which really started or articulated for the first time the rights of property owners to contest in some fashion a forced annexation under 7113. I know I'm not supposed to read at length from that case to you, so I won't. But I would like to call the court's attention to 166 L.F. 3rd at 948 and 949, which I think leaves a foundation for everything that transpired after that. It sets forth a public policy of allowing or granting, I should say, property owners the right to choose which municipality they will be governed by, especially in the face of a 7113 petition. Well, then they could certainly file an objection and go in and indicate in what respects the annexation was deficient, isn't that correct? They had the opportunity to do that certainly in this case as well. We had an opportunity, Your Honor, but it is ephemeral, to put it charitably. This was a 15-day notice. Well, but that's statutory, Counsel. Right. That's statutory. I mean, the argument then is with the legislature, right? We have no quarrel with the legislature. Okay. We have no quarrel with the legislation. But as a practical matter, having been involved in many zoning and annexation cases, I can assure this court that appearing at Glendale Heights on September 6, 2012, and articulating my objection to their forced annexation would be an absolute exercise in futility. This was something that was going down the road, and we were not going to be able to stop it. Our objection was created by filing the petitions pursuant to Leland Grove and its progeny. Well, how is, I asked the question of Counsel when we started, but I'll ask the same question of you. How is priority legally relevant when we only have one municipality that has completed the annexation process here? Well, the priority issue is determined by filing versus ordinance. Under 718, a priority jurisdiction is established by filing the petition with the appropriate municipality. That's according to Leland Grove, correct? Yes, and it's in the following cases. Okay, but then the legislature has stepped in and changed that, has it not? No, it did not, Your Honor. Why not? Why do you say it hasn't? Again, the public policy articulated in Leland Grove in the subsequent cases is that there has to be a right to choose. That policy was effected by establishing a rule that where there's a voluntary annexation under 718, you have initiated that annexation when you file your petition with the receiving municipality. Under 7113, you initiate the procedure when you actually pass the ordinance. In this case and in all of the cases that were decided, the ruling was that by filing the petition with the voluntary municipality, filing the 718 petition, gave Bloomingdale priority, despite the fact that the next day Glendale Heights passed an ordinance. The question is, the ordinance is not valid because the determination of priority was never resolved. The priority, filing of the petition versus the ordinance. But now, of what significance then, if we look at it that way, is this legislation? When is it used? When does it apply? I mean, why doesn't it cover this situation? It doesn't cover it. Again, you're asking me to speculate about Huntsman. No, I'm asking that we read the plain language of the statute. That statute says that once, let me step back, there are two situations under 7113C. The first situation is if the, I'll call it the voluntary municipality, receives a petition before notice is given for the publication. The second situation is if the voluntary municipality receives the petitions after the notice, but before the ordinance is adopted. Then they can't do anything because there's the 60-day waiting period. The 60-day waiting period, I think, is consistent with the thoughts that were articulated in the Leland Grove case in pages 948 and 949, which is to afford the two municipalities, or actually to afford the property owner to approach both municipalities and to put it in its vernacular to cut some kind of a deal. Understand that in this, and this is a classic example, in this situation, if the plaintiff's property goes into Glendale Heights, it goes in as agricultural estate and their industrial zoning is wiped out, which is obviously a horrible situation. That 60-day period affords the property owners to attempt to go back and make a deal with one municipality or the other, or if you want to put it in its bloodiest terms, to play one against the other and see what kind of a deal you can make. That's the reality of zoning. And if no deal can be had, then under the jurisdictional priority, Bloomingdale has the authority to proceed to consider the petitions, the voluntary petitions that were filed. Now, if, for example, the plaintiffs cannot work out a deal with Bloomingdale, and Bloomingdale rejects those petitions, then at that stage in the proceedings, Glendale Heights' action of annexing, I think, is effective. But until the parties go through that 60-day period, that's a cooling-off period, and until the parties go through that period and see what they can do to resolve the issues, bear in mind subsection C does not say Bloomingdale can't receive the petition. It doesn't say Bloomingdale can't consider the petition. All it says is that no other municipality can annex. Nor does it say that Glendale Heights can't annex during that period of time, which, in fact, they did. It doesn't. Obviously, that's the case. But bear in mind that under the decisional law here, Glendale Heights lost its authority. Granted, they can pass the ordinances, they can send the notices, they can do whatever they want in accordance with the statutes, but they don't have authority to do it because the prior petitions were filed with Bloomingdale. So their action is a nullity. But if you're correct that this is a period of time for negotiation, we'll use that appropriate term, I asked, did these people object to the Glendale Heights action? And the answer was no. So what are we going to negotiate if nobody approaches Glendale Heights? Well, bear in mind, I take exception to the concept that we didn't object. I think the most effective objection is to file those petitions because that blocks Glendale Heights by Did you give notice to Glendale Heights that you filed the petitions? Not at the time we did. Why not? If that blocks them, how do they know they're blocked? Well, first of all, the last petition was filed on the day that Glendale Heights passed their ordinance. Coincidence, but it was scheduled for that day. It was scheduled that day. Yes, and by intent. We got all of our petitions in before the meeting in Glendale Heights. How did Glendale Heights know that you had that petition pending? If the issue in Leland Grove is fundamental fairness, and that's the part I think you're going to read to us, because I have highlighted it in my own copy, fundamental fairness just isn't one way. It goes two ways. They have a right to know. And when did you tell them? I'm going to draw a blank on that question. Shortly thereafter, because at that stage of the proceedings, we started discussions about whether we had priority and so forth. Did you do it before December 12th? Do you know? Because that would be a definitive date, the recording of the September, I'm sorry, not December, September, a definitive date in this particular scenario. I cannot tell you that. I do know that Glendale Heights was given those petitions very shortly afterwards, because at that stage in the proceedings, counsel for Glendale Heights filed FOIA requests and examined all of our paperwork and all of our handiwork to see if there was a problem with it. They never addressed any, quote, problems, close quote, with that. Would you say shortly thereafter? Do you mean days, weeks? Your Honor, I can't tell you. At this stage in the proceedings, it was not months. It was probably days or a week or two when we advised them that we had filed with Bloomingdale. I can't give you a definitive date. But the issue is I do know that they immediately started to examine all of the proceedings that we undertook to file our petitions in Bloomingdale. And so they were well aware of it. This was not something that we held in our hip pocket for months on end. The fight, if you will, started almost immediately. Thank you for your time. Thank you. Good morning. Good morning. May it please the Court. My name is William Belmonte. I'm with the law firm of Marquardt, Belmonte & Wheaton. I represent the plaintiff, Graber Concrete Pipe Company. Mr. Connerty's gone over many of the issues, but I believe I should be addressing the defenses, the affirmative defenses that counsel has raised regarding abandonment and justification. Regarding abandonment, the village asserts that we abandoned our petition, which we filed the same day that they passed the ordinance, by our inaction on the voluntary petitions that we in fact did file. And I don't believe that is the case. Shortly after the voluntary petition was filed, the involuntary annexation was passed. Within six weeks, this matter was filed in the lower court, in the circuit court of DuPage County. Our complaint for co-abandonment was initiated. At that point, for all intents and purposes, Glendale Heights has held themselves out to be the lawful municipality. They filed their annexation. They reported and gave notice to the various parties. And based on that, and the law is clear, you can't have two annexations at one time. Up until the point of the determination by the lower court in April of 2013, we, for all intents and purposes, were in Glendale Heights. We had gone to Bloomingdale. Bloomingdale would not consider, based on the fact that we had a pending legal matter. And that's not, that makes sense and it's not unusual because to spend the time and the resources and going through and preparing and passing and agreeing to a voluntary annexation, it's just, that's not very practicable. What we have here is, we had every intent to proceed forward, but based on the court action, no one, we couldn't finish it up, nor was it realistic that we do it at that time. Did you or your client give notice to Glendale Heights on that date that they had filed a voluntary petition with Bloomingdale? No, Your Honor, we did not appear at that hearing that evening. We had, my client had come in from Ireland and we signed the petition about 10 o'clock the evening before and I recorded it about 10, 20 in the morning the day of. So I was the last shoe to fall. An objection, in my mind, means that there is some outcry, some notice. And counsel said, well, we filed the best objection that we could and we filed these voluntary petitions. Well, I guess the issue that I'm very confused about is, if that's your objection, how does this municipality know? Now, I'm not discounting at all the fact that, you know, these municipalities know what the other municipality is doing. There is that underlying, oh, I bet they're looking at this, I bet they're looking at that. But we're talking about now the law. And we're talking about Leland Grove, which talks about fundamental fairness. You say your client's entitled to fundamental fairness. The city's entitled to fundamental fairness, too. And that would be notice of this petition. Correct, Your Honor. And shortly after, both parties, I believe, were exchanging information, whereas Glendale Heights was foiling Bloomingdale. And we, as plaintiffs, were foiling Glendale Heights to review the process that they undertook to effectuate their ordinance, to make sure they kept within the procedures of 7113. But simultaneously with filing the petitions, you did not notify Glendale Heights. No. When the petitions were filed that morning, we did not appear, nor did we let them know prior to that. And I believe, and the case escapes me at this point, but there was another situation in one of the other priority cases where the same situation where notice was given and a petition, voluntary petition was filed, and the other municipality continued and they went on and they enacted it anyways, regardless of the notice that they had given them. The voluntary municipality had asked them if they would hold off on going forward, and that wasn't the case. And I submit to you that in the municipalities, six people trying to stop a moving train is not going to happen. I mean, they're going to do what they want to do, regardless of if we go there and we scream to the ceiling that we object, this is not fair. They have their marching orders and they know what they want and they're going to move forward. Well, but then you have at least a notice to them and a record that we don't want this. Right now, I mean, we're calling one involuntary and one voluntary. Correct. Your client filed a voluntary, I keep wanting to say legal in growth, but it's Glendale Heights, the involuntary. That doesn't, those two words don't mean anything here in terms of, you know, they're being forced. Somebody needs to tell Glendale Heights there is an issue here. We don't know that they wouldn't, that they would have stopped or they would have gone forward. We have no knowledge of that. And based on the decisional case at the time and the way we interpreted it, Your Honor, was if we just, if we didn't file our voluntary and we just showed up to the meeting and said, whoa, we need to stop this, this isn't fair to our clients, that we object to this, would they have said, let's call a timeout and we'll have a discussion? Had they tried to contact the property owners prior to that to discuss, hey, we're going to bring your property in, would you like to sit down and talk to us? That never happened either. And so the effect of us showing up that evening, that just didn't seem to be, get us anywhere that our clients would want to go. We went and we took the decision and we filed those voluntary petitions. Well, but it might, it's not maybe that you would have been successful, but what it might have looked like later if you're trying to talk about fundamental fairness is the question I'm posing to you. Well, and after, and I understand what Your Honor's point is, and it's a valid point, but we didn't just sit on the sidelines for six months doing nothing. We proceeded on and we filed our complaint with circuit court within six weeks, four to six weeks of this happening. So we weren't just idly sitting by and said, oh, we'll just sit back and we'll see how this unfolds. We took proactive measures and we went forward to resolve the issue. So is it your position that you complied with what the case law was at the time? Absolutely. So regarding the abandonment, as much as we would have liked to proceed on with Bloomingdale, it just wasn't going to happen because Bloomingdale sees this action in court. They don't want to get involved. They don't want to, you know, get their, spend their time and resources to cash this out. And as much as we would have loved to proceed on, there's, we're fighting this battle instead of that battle, Your Honor. Judge, based on, based on the fact, and could you just, if I could briefly comment on justification? Quickly. And I think the key is on the justification argument that Glendale Heights has brought forward. The key is they have to have a valid exercise of power. And based on our position, their exercise of power was not valid because we were the priority party. And thus, if the lower court did not address that, and I don't believe that's a valid point on that affirmative defense. And based on that, Your Honor, we would ask that you uphold the lower court's ruling and you would fight for the claims. One question, though. Would you agree that the priority party has never, at least in the case law that I've observed, been the individuals? It's always been the other municipality? Agreed. As you look through all the cases, it's usually municipality versus municipality. We, as the property owners, we've taken it upon ourselves to fight the battle because it's so important to the property owners. And, you know, in closing, that's, we would ask that we preserve the law as it's been indicated and give the property owners their right to choose. And that's what the ultimate thing is. If the property owners want a right to choose, they were taken away by the involuntary annexation. And that's why we acted, Your Honor. Thank you. Thank you. Mr. Atkin. So, counsel, why don't we still look to Leland Grove? Well, Your Honor, I think that the legislature has indicated that their intent has manifested in the 2009 amendment. Leland Grove is premise, and they expressly state it, that the reason why they're looking to the common law as to initiation of annexation as the controlling inquiry was in the absence of any statute providing any type of procedure as to how to discern between these types of overlapping issues. We submit that the 2009 amendment provides a very easy and understandable mechanism. If the initiation of an overlapping annexation occurs before the notice is given under subsection B, then that particular proceeding then gets to go forward. If it occurs after the notice, then there can be no annexation for a period of 60 days subsequently. If that's the issue that Leland Grove says we don't have any real authority to rely on, and if you were here for any of the last arguments, you might understand this question as well, 21 years went by before the legislature did anything. I understand. That's a long time. Why did they wait so long? I can't answer that question, Your Honor. Certainly, I believe that there's been, this annexation statute has been amended timeless, many, many times. I mean, this has been a progression of time, of significant statutory changes. There's one case that I cited here from 1969, if I can look at my table real quickly, where there was a statutory scheme for involuntary, it's, excuse me for a minute. Yes, people, XREL Landware versus Village of North Barrington, a 1968 case from the 2nd District. In that case, there was no notice given before, in the statutory scheme. The question in that case presented was did that violate their due process rights under a 1983 claim? And they found no. The property owners don't have a due process right to notice. The statutory scheme at that time provided that all they had to do was adopt an ordinance. They didn't have to give notice. Again, that's an extreme that's no longer, that statute's no longer in effect. But at that time, that was upheld as being a valid exercise of the legislature's authority of how these types of things were handled. As such, we submit that, you know, this right to choose, I think, is kind of illusory because it's not, you know, it's not really, they're not choosing. It's culminated in both instances by the adoption of an ordinance. The people who are submitting the petitions aren't voting. So their choice is merely a preference. And, you know, they're making a lot of noise about, you know, it's our choice. We have a right. And I suggest that the right is somewhat illusory. This is part of the statutory scheme. And the legislature has provided that the culmination of it is accomplished by the voting of the municipal corporation. Okay. As such. What we have then is a scheme that creates a right that you've already identified of the municipalities in question, Bloomingdale and, I'm going to say it like Rome again, Glendale Heights. Yes. And then we have this issue of this is my property. You're not going to take it without my agreement. So we've got a constitutional right and we have a statutory right. Are they bashing heads or does the statutory right sort of clarify the constitutional right? Because there's a different power. You're annexing under a police power basically. Yes, absolutely. And so you have to show, like, need and ability to provide for and things of that nature. Sure. Does that trump the individual's right to go where they want to go? I say yes, Your Honor, because the legislature has not aggrandized the individual's right to the level of being a trump card over the municipality's exercise of their police power. Certainly they have a preference, right? And they can undertake, file involuntary. They can object. Those instances, as we have seen, they did not object. I submit that it's critical that these folks should have come to the meeting that night on September 6th of 2012 and they should have expressed their outrage and their preference. I submit that the elected officials of the village, Glendale Heights, would have taken those objections very seriously. Because they never happened, we will never know what the outcome would have been. Would we be in a different position if they had objected and Glendale Heights went ahead? Would you be in a different position? I think that the arguments would have been a little different, Your Honor, certainly. I think that the outcome would still be the same. I think that this court is obligated to effectuate the legislative intent as manifested by way of the plain and ordinary meaning of the language of these statutes. And by my reading of them, I do not see any language that allows these folks to void a valid exercise of the police power under this statute simply by filing another voluntary petition with another one after notice is given. So the notice is irrelevant. Whether they'd given you the petition that day or not given you or hand-delivered it doesn't make any difference, right? Well, I don't think it, you know, again... Yes or no? You have to be careful with notice. Yes, it makes a difference. I say that it is relevant. No, I didn't ask you that. Does it make a difference? Under the statute, no. So all this about whether they gave you the petition, didn't give you the petition doesn't make any difference? Because they acted the way they did, it doesn't. Had they gotten it... Don't qualify it. Either it makes a difference or it does not that you would... In other words, if you had gotten their voluntary petition prior to the action of the board that evening... Yes. ...would that have made a difference? Could the board still have annexed... Factually, it could have. Factually, it could have made a difference. Legally, I think that even if they had received the objection, it's still within their exercise of their police power to... So it doesn't make any difference. They could have done exactly what they did with or without notice. That's correct, Your Honor. Okay. In summary, I thank you for your time this morning. Appreciate your consideration of this issue. And, again, it is our desire as the village of Glendale Heights to ask for reversal of the trial court's ruling and judgment to be entered in favor of the village of Glendale Heights. Thank you for your time. Thank you, counsel, for your arguments. We appreciate your effort as well. And we will take the matter under advisement. We will stand again in recess to prepare for our next hearing.